IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| ERIE INSURANCE COMPANY OF NEW YORK; ERIE INSURANCE COMPANY; ERIE INDEMNITY COMPANY, | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

The United States of America alleges:

1. This action is brought to enforce the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("Fair Housing Act"), 42 U.S.C. §§ 3601 *et seq*. It is brought on behalf of the Secretary of Housing and Urban Development and the Fair Housing Council of Central New York pursuant to Section 812(o) of the Fair Housing Act, 42 U.S.C. § 3612(o).

2. This Court has jurisdiction over this action under 28 U.S.C. § 1345 and 42 U.S.C. §§ 3612(o).

3. Venue is proper because the claims alleged herein arose in the Western District of New York.

4. Defendant Erie Indemnity Company is a Pennsylvania corporation that owns the Erie

      Insurance Company and the Erie Insurance Company of New York, which do business in New York State.

5. Defendant Erie Insurance Company is a Pennsylvania insurance business corporation licensed to sell insurance in New York State, and engaged in the sale of homeowner's and renter's insurance in New York State.

6. Defendant Erie Insurance Company of New York is a New York corporation licensed to sell insurance in New York State, and engaged in the sale of homeowner's and renter's insurance in New York State.

7. During the period January 1, 1999, through at least June 30, 2004, Defendants offered homeowner's and renter's insurance policies for sale in New York State. Defendants marketed these policies throughout Upstate New York, that is, throughout the state except in New York City, Long Island and the suburban counties north of New York City, including Putnam, Rockland, and Westchester Counties.

8. There are racially segregated housing patterns in communities in Upstate New York.

9. Defendants offered multiple types of homeowner's policies, including Ultracover and Extracover. The Ultracover policy offers broader coverage than the Extracover policy.

10. Defendants' homeowner's and renter's insurance policies are sold to consumers through insurance agents affiliated with Defendants.

11. Defendants choose agents with whom to affiliate and engage in an agent appointment process that includes extensive discussions with the prospective agent. The appointment process includes the submission to Defendants of the prospective agent's business plan

        and may include a background check of the prospective agent.

12.     The agencies selling Defendants' policies provide insurance quotes to potential customers and then complete an application for insurance with the customer. Completed applications are sent to Defendants and are reviewed for compliance with Defendants' underwriting guidelines. If the application does not meet Defendants' guidelines, the company remains bound to the policy, but may cancel the insurance contract pursuant to state regulations governing the cancellation of insurance.

13.     Defendants' relationship to the agencies that sell Erie insurance policies is governed by an Agency Agreement, which provides, in part, that "ERIE appoints and authorizes AGENT to secure applications for the lines of insurance ERIE writes," and that the agencies must "abide by the manuals, rules, regulations and specific instructions of ERIE." The Agreement also requires that the agencies "maintain an appropriate facility and staff, which advance ERIE's corporate objectives and are capable of providing the service that is ERIE's hallmark," and maintain records of insurance transactions and make those records available to Defendants.

14.     Defendants supply underwriting software to the agencies for the quotation and writing of policies.

15.     Defendants provide the agencies with training manuals on Erie procedures.

16.     Defendants provide the agencies with marketing materials such as brochures and television advertisements.

17.     Defendants engage in an annual review, designed to increase profitability, of agencies

that sell their products.

18. During the time period January 1, 1999, through at least June 30, 2004, Defendants selected agents and operated their insurance business in a manner that produced disparities in their market share and the types of homeowner's policies they sold between neighborhoods with lower percentages of African American population and those with greater percentages of African American population.

   a. As the percentage of black population increases, there are fewer agents selling Defendants' homeowner's and renter's insurance policies.

   b. As the percentage of black population increases, Defendants' share of the homeowner's insurance market decreases.

   c. As the percentage of black population increases, Defendants' share of the renter's insurance market decreases.

   d. As the percentage of black population increases, the percentage of Erie policies that are Ultracover decreases.

19. The disparities described in paragraph 18 are statistically significant. These statistically significant disparities persist despite controlling for factors related to ability to purchase insurance and the need for coverage, for the possibility that the effects of these factors vary among counties, and for differences in counties' sizes and minority populations.

20. The totality of Defendants' policies and practices, which resulted in the statistically significant disparities described herein, constitutes the redlining of predominantly and majority black neighborhoods in Upstate New York for Defendants' homeowner and

renter insurance business. Defendants' policies and practices are intended to deny and discourage, and have the effect of denying or discouraging, an equal opportunity to residents of African American neighborhoods, on account of the racial composition of those neighborhoods, to obtain homeowner's and renter's insurance, or higher-quality insurance policies. These policies and practices are not justified by business necessity or legitimate business considerations.

21. Defendants also are liable for the actions of the agents with whom they affiliate for the purpose of selling Erie insurance products because they have an agreement by which the agencies act for Defendants in the sale of Erie policies and Defendants control the vital parts of such sales, including setting the terms by which such policies may be written.

22. On or about February 14, 2002, the Fair Housing Council of Central New York filed a complaint with HUD pursuant to Section 810(a) of the Fair Housing Act, 42 U.S.C. § 3610(a), alleging discrimination in housing on the basis of race. On or about February 9, 2006, and again on April 9, 2006, the Fair Housing Council of Central New York amended its complaint to allege that Defendants made unavailable or denied dwellings because of race, and discriminated in the terms, conditions, or privileges of the sale of dwellings because of race.

23. On or about December 22, 2005, HUD's Assistant Secretary for Fair Housing and Equal Opportunity filed a complaint with HUD pursuant to Section 810(a) of the Fair Housing Act, 42 U.S.C. § 3610(a), alleging discrimination in housing on the basis of race. In her complaint, the Assistant Secretary alleged that Defendants made unavailable or denied

         dwellings because of race. The Assistant Secretary further alleged that Defendants discriminated in the terms, conditions, or privileges of the sale of dwellings because of race.

24. Pursuant to the requirements of 42 U.S.C. §§ 3610(a), (b) & (g), the Secretary of HUD conducted and completed an investigation of the complaints filed by the Fair Housing Council of Central New York and by the Assistant Secretary for Fair Housing and Equal Opportunity, attempted conciliation without success, and prepared a final investigative report. Based on information gathered during the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g), determined that reasonable cause exists to believe that discriminatory housing practices had occurred.

25. On or about October 20, 2006, the Secretary issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g), charging Defendants with engaging in discriminatory housing practices in violation of the Fair Housing Act.

26. On or about November 6, 2006, the Fair Housing Council of Central New York elected to have the Charge of Discrimination resolved in a civil action filed in federal district court, pursuant to 42 U.S.C. § 3612(a).

27. On or about November 7, 2006, HUD's Chief Administrative Law Judge issued a Notice of Election of Judicial Determination and terminated the administrative proceeding on the complaint filed by the Fair Housing Council of Central New York and by the Assistant Secretary for Fair Housing and Equal Opportunity.

28. Following this Notice of Election, the Secretary of HUD authorized the Attorney General

to commence a civil action, pursuant to 42 U.S.C. § 3612(o).

29. By the conduct described in the foregoing paragraphs, Defendants Erie Insurance Company, Erie Indemnity Company, and Erie Insurance Company of New York, have:

    (a) Made unavailable or denied dwellings because of race in violation of 42 U.S.C. § 3604(a); and

    (b) Discriminated in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, in violation of 42 U.S.C. § 3604(b).

30. The Fair Housing Council of Central New York is an aggrieved person, as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of Defendants' conduct described above.

31. Defendants' conduct described above was intentional, willful, and taken in disregard for the rights of others.

32. As the result of Defendants' discriminatory conduct, there may be other victims who are "aggrieved persons" as defined in 42 U.S.C. § 3602(i). These persons may have suffered actual injury and damages as a result of Defendants' discriminatory conduct.

33. Defendants' conduct described above was intentional, willful, and taken in disregard for the rights of others.

WHEREFORE, the United States prays that the court enter an ORDER that:

1. Declares that Defendants' policies and practices, as alleged herein, violate the Fair Housing Act;

2. Enjoins Defendants and all other persons in active concert or participation with any of them, from:

    (a) Making unavailable or denying a dwelling to any person because of race;

    (b) Discriminating in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race; and

    (c) Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct; and

3. Awards monetary damages, pursuant to 42 U.S.C. § 3612(o)(3), to the Fair Housing Council of Central New York.

The United States further prays for such additional relief as the interests of justice may require.

Dated: December 23, 2008

| | |
|---|---|
| TERRANCE P. FLYNN<br>United States Attorney | MICHAEL B. MUKASEY<br>Attorney General |
| s/Jane B. Wolfe<br>JANE B. WOLFE<br>Assistant United States Attorney<br>United States Attorney's Office<br>Western District of New York<br>138 Delaware Avenue<br>Buffalo, NY 14202<br>(716) 843-5874<br>Jane.Wolfe@usdoj.gov | s/Lisa M. Krigsten<br>LISA M. KRIGSTEN<br>Acting Assistant Attorney General<br>Civil Rights Division<br><br>s/Steven H. Rosenbaum<br>STEVEN H. ROSENBAUM<br>Chief, Housing and Civil<br>Enforcement Section<br><br>s/Michael S. Mauer<br>MICHAEL S. MAURER<br>Deputy Chief<br>R. TAMAR HAGLER<br>SEAN R. KEVENEY<br>Attorneys<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave., N.W. - G St.<br>Washington, D.C. 20530<br>Phone: (202) 616-5617<br>Fax: (202) 514-1116<br>Tamar.Hagler@usdoj.gov |